**In re Kathleen M. PERT, f/k/a Kathleen M. Riffe, Debtor.**

**Kathleen M. Pert, f/k/a Kathleen M. Riffe, Plaintiff,**

**v.**

**United States of America, Defendants.**

**Bankruptcy No. 93–13179–8B7. Adversary No. 95–625.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

May 23, 2000.

B. Gray Gibbs, St. Petersburg, FL, for Plaintiff.

David N. Geier, Washington, DC, for Defendant.

## ORDER ON MOTION BY THE UNITED STATES FOR ENTRY OF SUMMARY JUDGMENT ON ISSUE OF 11 U.S.C. § 523(A)(1)(C)

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

### I. INTRODUCTION

THIS CAUSE came on for consideration upon the Motion by the United States for Entry of Summary Judgment on Issue of 11 U.S.C. § 523(a)(1)(C). This Court has considered all arguments and evidence, including the entire record for this case, consistent with a ruling on a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(holding the standard of proof in summary judgment rulings is the same as it would be at trial); *Celotex v. Catrett*, 477 U.S. 317, 323–35, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (discussing the appropriate burdens of proof and types of evidence to use in summary judgment decisions); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (detailing the elements of summary judgment analysis).

The Internal Revenue Service (IRS), Defendant in this case, moves for summary judgment on the grounds that a prior decision entered by the United States Tax Court[1] should be given issue preclusive effect[2] in this case. The IRS argues the findings in this prior decision, if given preclusive effect, establish all of the elements necessary to find the tax liability of Kathleen Pert, Debtor/Plaintiff in this action, is nondischargeable under 11 U.S.C. § 523(a)(1)(C). The analysis begins with examining the Tax Court opinion.

## II. THE TAX COURT OPINION

The Tax Court determined the Debtor and her husband, Harvey Pert, are liable as transferees under 26 U.S.C. § 6902.[3] The opinion following a trial includes extensive findings of fact surrounding events after the death of Debtor's previous husband, Timothy C. Riffe. The taxes at issue derive from Debtor's marriage to Mr. Riffe, and from actions taken while Debtor acted as personal representative of the Riffe estate.

At trial, the IRS bore the burden of proving the Debtor was liable as a transferee of assets from the Riffe estate.[4] As part of determining this issue, the Tax Court examined the Debtor's actions under the law governing fraudulent transfers in the State of Florida.[5] Applying the badges of fraud found in Ch. 726.105(a) Fla. Stat. (1988) to the facts in the opinion, the Tax Court determined transfers of Riffe estate assets by the Debtor, as well as transfers of her own assets, established she "had actual intent to hinder, delay, or defraud [the IRS]."[6]

Specifically, the Tax Court found that the following eight of eleven badges of fraud examined were present:

(1) the transfers were to an insider, her spouse;

(2) Debtor kept possession or control of the assets as all were jointly owned, or became jointly owned in a short time period;

(3) the transfers were concealed through the use of numerous transactions and an extensive use of cash;

(4) Debtor anticipated a lawsuit with the IRS at the time the transfers began;

(5) Debtor transferred substantially all of her assets;

(6) Debtor's spouse paid no consideration for assets transferred to him;

(7) Both the Riffe estate, and later the Debtor, were insolvent as a result of the transfers

(8) Both the Riffe estate, and later the Debtor, transferred property shortly after incurring a substantial debt.[7]

Without restating the specific facts underlying each badge, it is readily apparent that the conclusions of the Tax Court on the issue of fraudulent intent were sup-

---

**1.** *Harvey & Kathleen Pert v. Commissioner of Internal Revenue Service,* 73 T.C.M.(CCH) 2426, 1997 WL 129358 (T.C. March 24, 1997).

**2.** Historically, issue preclusion is embodied in the doctrine of collateral estoppel. *See Allen v. McCurry,* 449 U.S. 90, 94–96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); 18 James Wm. Moore, *Moore's Federal Practice,* ch. 132 at 132–1 (Daniel R. Coquillette et al. eds.1999).

**3.** *Pert,* 73 T.C.M.(CCH) at 2436 & 2439.

**4.** Though the Tax Court also determined Harvey Pert was liable as a transferee as he was a recipient of assets of both the Riffe estate and the Debtor, *see id.* at 2439, this Court is only concerned with the facts established concerning the Debtor's tax liability.

Previously, this Court considered Debtor's liability as a transferee. *See Pert v. United States of America (In re Kathleen Pert),* 201 B.R. 316, 320 (Bankr.M.D.Fla.1996).

**5.** *Pert,* 73 T.C.M.(CCH) at 2438–39.

**6.** *Id.* at 2439. The Tax Court also found the Debtor's transfers were "per se" fraudulent under Ch. 726.106 Fla. Stat. (1988). *Id.* at 2436. However, this Court relies on the findings concerning the actual intent of the Debtor in light of the § 523(a)(1)(C) requirement that Debtor act willfully. *See id.* at 2438–39.

**7.** *Id.*

ported by ample and detailed trial evidence.

## III. ISSUE PRECLUSION

### A. The Four Part Test

■■■ In its motion for summary judgment, the IRS asserts the doctrine of issue preclusion. The doctrine requires this Court to recognize prior adjudication of specific issues by other courts in bankruptcy cases. See In re Daniels, 91 B.R. 981, 982 (Bankr.M.D.Fla.1988). "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); see also McDonald v. City of West Branch, Michigan, 466 U.S. 284, 287 at n. 5, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984) (quoting the same passage from the Allen opinion).[8] Federal law requires the following four elements to invoke issue preclusion:

> (1) the issue at stake must be identical to the one decided in the prior action;
> (2) the issue must have been actually litigated in the prior proceeding;
> (3) the prior determination of the issue must have been a critical and necessary part of the earlier decision; and
> (4) the standard of proof in the current action must not be significantly more stringent than the standard in the prior action.

In re Bush, 62 F.3d 1319, 1322 (11th Cir. 1995).[9] The policies behind issue preclusion include conserving judicial and party resources, preventing multiple litigations, and fostering confidence in determinations

on the merits. See id. at 1325 (citing In re Daily, 47 F.3d 365, 368 (9th Cir.1995)).

### B. Application of Issue Preclusion Doctrine to the Tax Court Opinion

■■■ The first element under issue preclusion doctrine requires an analysis as to issue identity. The issue the IRS seeks to preclude relitigation about is whether the facts supporting the Tax Court determination of transferee liability support a finding that the Debtor "willfully attempted in any manner to evade or defeat [a] tax." 11 U.S.C. § 523(a)(1)(C). Determining the elements of § 523(a)(1)(C) may include an examination of the facts for the presence of badges of fraud to determine whether the Debtor acted "willfully."[10] As this Court's examination of the facts under § 523(a)(1)(C) would be virtually the same as that of the Tax Court's on the issue of fraudulent transfers, the issues are sufficiently identical.

The second element of issue preclusion doctrine requires the issue to be actually litigated in the previous decision. The issue was fully litigated before the Tax Court as is evidenced by the detailed Memorandum of Fact and Opinion.[11] The parties had a full and fair opportunity to present evidence and to be heard on all arguments relevant to whether the Debtor's transfers were fraudulent. Thus, the issue was actually litigated.

The third element required by issue preclusion doctrine is the earlier determined issue must be a critical and necessary part of the earlier judgment. In the tax court, determining whether the Debtor is liable as a transferee included a finding that the

8. See generally, 18 Moore, supra note 2, at ch. 132.

9. If this Court were examining a State Court opinion, the analysis would be different and is governed by Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 379–83, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). See Aquatherm Indus. v. Florida Power & Light

Co., 84 F.3d 1388, 1392–94 (11th Cir.1996); Bush, 62 F.3d at 1323 n. 6.

10. See Griffith v. United States of America (In re Griffith), 206 F.3d 1389, 1391–92 (11th Cir.2000).

11. See generally Pert, 73 T.C.M.(CCH) at 2426.

individual engaged in fraudulent transfers.[12] As noted above, the Tax Court found the Debtor engaged in activity designed to hinder, delay, or defraud the collection of the IRS debt.[13] Determining Debtor's intent was central to the finding of transferee liability, and thus, was critical and necessary to the earlier judgment.

■ Finally, under the fourth element, the standard of proof required in the prior action must not be significantly lower than the standard in the current action. *See Bush,* 62 F.3d at 1322. The Tax Court opinion does not mention what standard of proof was used in its determinations, nor have the parties raised any issues concerning a significant difference between the standard in the Tax Court and in this case. The standard of proof for litigation between parties under the Bankruptcy Code is by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). This Court presumes this standard was used in the Tax Court opinion. *See id.*[14]

This Court is satisfied that the four requisite elements to invoke issue preclusion are present in this case. The Tax Court's written opinion should be given issue preclusive effect. Having decided issue preclusion is appropriate, it is necessary to analyze the facts established by the Tax Court to determine whether the elements of § 523(a)(1)(C) are established by the Tax Court record.

### IV. 11 U.S.C. § 523(a)(1)(C)

Section 523(a)(1)(C) excepts tax debt from discharge where the Debtor is shown to have "willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C). This Bankruptcy Code section is the subject of a recent opinion by the United States Court of Appeals for the Eleventh Circuit, *Griffith v. United States (In re Griffith),* 206 F.3d 1389 (11th Cir.2000). Due to a rather complicated history on appeal, it is helpful to examine the history of the most recent opinion in light of the entire history of the case.

The debtor in *Griffith* was found liable for underpayments of tax by the United States Tax Court. *Id.* at 1391. The Tax Court did not find the debtor committed any fraud. *Id.*[15] Subsequent to the Tax Court ruling, the debtor engaged in a series of transfers of assets, and eventually filed for Chapter 7 relief in bankruptcy. *Id.* at 1391–92. The debtor filed an adversary proceeding seeking a determination of the dischargeability of the tax debt. *See id.*[16]

The Bankruptcy Court looked to the badges of fraud in order to infer whether the debtor acted willfully under § 523(a)(1)(C). *Id.* at 1392. Determining the debtor had the requisite intent, and that his actions were designed to evade or defeat payment to the IRS, the Bankruptcy Court determined debtor's taxes were nondischargeable under § 523(a)(1)(C). *Id.* This opinion was affirmed on appeal to the District Court. *See Griffith v. United States (In re Griffith),* 210 B.R. 216, 219–20 (M.D.Fla.1997).

---

12. *Id.* at 2438–39.

13. *Id.* at 2439.

14. There is a possibility the Tax Court used the more stringent clear and convincing evidence standard of proof. *See Griffith,* 206 F.3d at 1391. If so, it is still appropriate to afford the opinion issue preclusive effect as long as the standard was not less stringent than this Court's preponderance of the evidence standard. *See Bush,* 62 F.3d at 1322.

15. The standard of proof for finding fraud in the *Griffith* Tax Court opinion was by the more stringent standard of clear and convincing evidence. *Griffith,* 206 F.3d at 1391.

16. According to the original opinion entered by the Bankruptcy Court, the total tax debt at the time of the filing of the bankruptcy petition, including penalties and interest, was $1,984,121.66. *See Griffith v. United States of America (In re Griffith),* 161 B.R. 727, 730 (Bankr.S.D.Fla.1993).

On its initial review, the Eleventh Circuit reversed the underlying decisions.[17] Relying on a prior opinion,[18] the Court concluded § 523(a)(1)(C) applied only to efforts to evade assessment of tax, not efforts to evade payment.[19] In late 1999, the Eleventh Circuit vacated its decision, ordering the issue to be reheard en banc.[20]

The Eleventh Circuit decision on rehearing affirmed the Courts below, finding the debtor's tax debt nondischargeable. *Griffith*, 206 F.3d at 1391. In reversing the earlier decision, this recent *Griffith* opinion holds "the more reasonable interpretation of § 523(a)(1)(C) is that it renders nondischargeable tax debts where the debtor engaged in affirmative acts seeking to evade or defeat collection of taxes." *Id.* at 1395. This holding clarifies the scope of § 523(a)(1)(C), and adopts the view that the section applies to willful attempts to evade payment as well as assessment of tax liability. *Id.* at 1393–95.

Additionally, the *Griffith* Court outlines the elements necessary to finding a tax nondischargeable under § 523(a)(1)(C), stating "[t]he willful attempt to evade prong [ ] includes 'both a conduct requirement (that the debtor sought "in any manner to evade or defeat" his tax liability) and a mental state requirement (that the debtor did so "willfully").' " *Id.* at 1396 (quoting *In re Birkenstock*, 87 F.3d 947, 951 (7th Cir.1996)). In affirming the lower court ruling, the *Griffith* Court relies on the finding that "[debtor] engaged in intrafamily transfers of property for little or no consideration...," *id.*, and holds this conduct is covered by § 523(a)(1)(C). *Id.*

Finally, the *Griffith* Court notes a three prong test is used by several other courts when applying § 523(a)(1)(C): "whether '(1) the debtor had a duty under the law, (2) the debtor knew he had that duty, and (3) the debtor voluntarily and intentionally violated that duty.' " *Id.* The Eleventh Circuit relies on the Bankruptcy Court's findings that debtor was not a credible witness, coupled with the presence of badges of fraud, to determine the findings at trial were sufficient to support a finding of fraud. *Id.* at 1396–97. This finding of fraud, the Court holds, supports a determination that debtor's conduct was willful. *Id.* at 1397. Thus, the Court affirmed the decisions below. *Id.*

## V. APPLICATION OF TAX COURT OPINION TO 11 U.S.C. § 523(a)(1)(C)

■ The *Griffith* ruling requires an examination of the facts in this case to conclude whether the Debtor engaged in affirmative acts seeking to evade or defeat collection of her taxes. *Id.* at 1395. The IRS bears the burden of proof, and the standard is by a preponderance of the evidence. *Id.* at 1396. In analyzing the facts, the Court looks to both the Debtor's intent and conduct. *Id.* The intent is examined to determine whether the Debtor acted willfully. The conduct is examined in light of the affirmative acts taken by the Debtor.

### A. Intent: Defining Willfully

■ Regarding intent, this Court applies the three part test from *Griffith* to determine whether the Debtor acted willfully. The test asks whether the Debtor (1) had a duty under the law, (2) knew of the duty, and (3) voluntarily and intentionally violated that duty. *Griffith*, 206 F.3d at 1396. This is the same test used by the United States Supreme Court to determine willfulness in criminal tax cases. *Cheek v. United States*, 498 U.S. 192, 201, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). Reviewing a trial under 26 U.S.C. § 7201, the *Cheek* Court states, "[w]illfulness, as construed by our prior decisions in criminal tax cases, requires the Government to

**17.** *Griffith v. United States of America (In re Griffith)*, 174 F.3d 1222, 1225 (11th Cir.1999).

**18.** *Haas v. Internal Revenue Service (In re Haas)*, 48 F.3d 1153 (11th Cir.1995).

**19.** *Griffith v. United States of America (In re Griffith)*, 174 F.3d 1222, 1225 (11th Cir.1999).

**20.** *See Griffith v. United States of America (In re Griffith)*, 182 F.3d 1297 (11th Cir.1999).

prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily & intentionally violated that duty." *Id.* The choice of a criminal standard over a civil standard is significant in this area of the law, and requires some analysis.

This Court previously held the word "willful" as used in § 523(a)(1)(C) cases should be defined in accordance with the standard used in 26 U.S.C. § 7201, the statute governing criminal tax evasion, as opposed to 26 U.S.C. § 6653, the statute governing civil additions to tax for negligence or fraud. *See Howard v. United States of America (In re Howard)*, 167 B.R. 684, 689 (Bankr.M.D.Fla.1994)(citing *Spies v. United States*, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943)(defining criminal tax evasion under 26 U.S.C. § 7201)). In contrast, the Bankruptcy Court in *Griffith* chose to apply the less stringent civil standard found in § 6653, i.e. "willful conduct denotes intentional, knowing and voluntary acts." *Griffith*, 161 B.R. at 733. The difference of opinion in this Court's *Howard* ruling and that of the Bankruptcy Court in *Griffith* is reflective of the differing points of view on this issue.[21]

In *Howard*, the Debtor failed to pay his tax, but took no further steps to evade or defeat his liability to the IRS. *Howard*, 167 B.R. at 688–89. In choosing to follow 26 U.S.C. § 7201, this Court defined willfulness as "'... a voluntary, intentional violation of a known legal duty...,'" *id.* at 688, (quoting *United States v. Pomponio*, 429 U.S. 10, 12, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976)), and required some affirmative act to conceal or mislead must be taken by the Debtor, i.e. conduct beyond merely failing to pay taxes, in order to find a tax liability nondischargeable under § 523(a)(1)(C). *Id.* at

688. In so holding, this Court specifically rejected a line of cases following *Toti v. United States (In re Toti)*, 24 F.3d 806, 808–09 (6th Cir.1994)(holding § 523(a)(1)(C) applies to acts of omission as well as commission, and rejecting 26 U.S.C. § 7201 as the proper standard). The Eleventh Circuit also held an affirmative act beyond mere failure to pay is required to find a debt nondischargeable under § 523(a)(1)(C). *See Haas*, 48 F.3d at 1155–56 (rejecting the reasoning in *Toti*). This holding is specifically reaffirmed in *Griffith*, 206 F.3d at 1392–93.

By combining the affirmative act requirement in *Haas* with the three part test used in criminal tax cases, it appears to this Court that the *Griffith* opinion implicitly adopts the 26 U.S.C. § 7201 standard applied in *Howard*. However, the Eleventh Circuit's silence in *Griffith* as to whether it adopts a civil or criminal standard, and its affirmance of the Bankruptcy Court's use of a civil standard, prompted this Court to further examine the authority considered as the basis for the three part test. Primarily, the *Griffith* Court relies on opinions from the Seventh and Fifth Circuits. *See In re Birkenstock*, 87 F.3d 947, 952 (7th Cir.1996); *Bruner v. United States (In re Bruner)*, 55 F.3d 195, 197 (5th Cir.1995).

Reliance on these cases presents difficulties as both of those Courts appear not to recognize the three part test as a distinct criminal standard. In *Birkenstock*, the Seventh Circuit is silent on whether it adopts a civil or criminal standard to define willful, but ultimately combines the civil and criminal standards, stating,

> ... courts have interpreted "willfully," for the purposes of § 523(a)(1)(C), to require that the debtor's attempts to avoid his tax liability were *"voluntary, conscious, and intentional."* *Toti*, 24

---

**21.** The District Court opinion in *United States v. Toti (In re Toti)*, 149 B.R. 829 (E.D.Mich. 1993), contains a discussion of the competing arguments. *See Id.* at 832–34. *See also Domanus v. United States*, 961 F.2d 1323, 1324–

26 (7th Cir.1992)(discussing similar arguments regarding civil versus criminal standard in the context of 26 U.S.C. § 6672 liability).

F.3d at 808. In other words, the debtor must both *(1) know that he has a tax duty under the law,* and *(2) voluntarily and intentionally attempt to violate that duty. Bruner,* 55 F.3d at 197.

*Birkenstock,* 87 F.3d at 952 (emphasis added). The first standard is used routinely in civil tax cases.[22] The second standard, a shortened version of the three part test found in *Griffith,* is attributed to the *Bruner* opinion. *Id.*

A review of *Bruner* reveals an assertion that this is a *civil* standard. *Bruner,* 55 F.3d at 197. "This three-prong test for civil willfulness has been enunciated by other courts to consider the issue...." *Id.* at n. 4 (citing the District Court opinions in *Haas,* 173 B.R. 756 (S.D.Ala.1993), *rev'd* 48 F.3d 1153 (11th Cir.1995) and *Toti,* 149 B.R. 829 (E.D.Mich.1993), *aff'd* 24 F.3d 806 (6th Cir.1994)). Thus, the *Bruner* Court relies on two opinions to assert the three prong test is a civil standard; the District Court case in *Haas,* which the Eleventh Circuit reversed, *see Haas,* 48 F.3d at 1161, and the District Court case in *Toti,* which contains reasoning specifically rejected by the Eleventh Circuit. *See id.* at 1158–59.

Reviewing the District Court opinion in *Toti,* this Court finds it is replete with references to the civil definition of willful,

i.e. a voluntary, conscious and intentional act, *Toti,* 149 B.R. at 832–34, and specifically rejects a criminal standard. *Id.* at 834. This Court finds no support in the *Toti* District Court opinion for finding the three part test is a civil standard. Turning to the *Haas* District Court opinion, the three part test is referred to as the civil standard used in 26 U.S.C. § 6672 civil tax penalty cases. *Haas,* 173 B.R. at 758.[23] Once again, the test is attributed to the *Toti* District Court opinion, where this Court finds no mention of this three part test in connection with the definition of "willful" in civil tax cases. The *Haas* District Court also refers to several other cases for this proposition, including the Supreme Court Opinion in *Cheek,* which explicitly states the three part test is a criminal standard.[24]

Given the implications in the *Bruner* and the *Birkenstock* opinions that the three part test adopted in *Griffith* is a civil standard, and the *Griffith* Bankruptcy Court's use of the actual civil standard, there is some doubt as to whether the Eleventh Circuit intended to adopt this criminal standard. Nevertheless, the requirement of affirmative acts in conjunction with the three part test clearly follows prior opinions which adopt the 26 U.S.C. § 7201

---

**22.** *See Toti,* 24 F.3d at 809; *Domanus,* 961 F.2d at 1325 (comparing a criminal tax prosecution standard requiring "... an intentional violation of a known legal duty...," with the civil standard " '[where] willful conduct denotes intentional, knowing and voluntary acts...,' " in context of 26 U.S.C. § 6672 transferee liability)(quoting *Monday v. United States,* 421 F.2d 1210, 1215 (7th Cir.1970)).

**23.** This Court notes some Courts look to cases interpreting 26 U.S.C. § 6672 for guidance in § 523(a)(1)(C) cases, *see, e.g., Fuller v. United States (In re Fuller),* 189 B.R. 352, 356 (Bankr.W.D.Pa.1995). As previously stated in *Howard,* this Court finds no logical connection between 26 U.S.C. § 6672 and § 523(a)(1)(C), *see Howard,* 167 B.R. at 686 n. 1, and would not apply a 26 U.S.C. § 6672 standard in § 523(a)(1)(C) cases.

**24.** *Cheek,* 498 U.S. at 201, 111 S.Ct. 604. The other cases cited in the *Haas* District Court opinion for the proposition that the three part test is a civil standard similarly do not support that conclusion. *See Domanus,* 961 F.2d at 1324–25 (delineating clearly the difference between a criminal standard, as found in *Cheek,* and a civil standard); *Comm'r of Internal Revenue v. Peterson (In re Peterson),* 152 B.R. 329, 335 (D.Wyo.1993) (holding...*Cheek v. United States* sets forth the elements which must be shown by the government in order to prove "willfulness[,]" without characterizing the test as criminal or civil); *Toti,* 149 B.R. at 832 (discussing the civil standard "voluntarily, consciously, or intentionally..."); *Carapella v. United States (In re Carapella),* 105 B.R. 86, 89 (Bankr.M.D.Fla.1989)(holding debtor's tax nondischargeable under § 523(a)(1)(C), but adopting no specific definition of "willful").

standard, as this Court did in *Howard*.[25] Therefore, this Court can only conclude the definition of willfully as used in § 523(a)(1)(C) is the same as that adopted in the *Howard* opinion, and will apply that standard here. Nonetheless, whether the test is criminal or civil, the decision herein is not changed.

### B. Intent: Applying the Three Part Test

In this case, the Debtor had a duty to pay taxes, both individually and as the personal representative of her deceased husband's estate. *Pert,* 73 T.C.M.(CCH) at 2427, 2429–30. As she signed closing agreements with the IRS, and accepted responsibility for filing returns on behalf of the Riffe estate, *see id.,* this Court concludes she knew of the duty to pay tax. Finally, the presence of numerous badges of fraud led the Tax Court to conclude the Debtor intended to hinder, delay, or defraud the IRS. *Id.* at 2438–39. This finding by the Tax Court establishes the Debtor voluntarily and intentionally violated her known duty. This Court is satisfied the Tax Court findings establish the intent required in a § 523(a)(1)(C) analysis.

### C. Conduct

Regarding conduct, the Debtor in this case took certain steps to evade collection of taxes. In holding the Debtor made fraudulent transfers, the Tax Court found the Debtor and her spouse opened over 20 bank accounts between 1991 and 1994. *Pert,* 73 T.C.M.(CCH) at 2431. The majority of the accounts were closed in less than six months, and some within 2 days of being opened. *Id.* Further, though the Debtor did not conceal transfers, she used cash extensively. *Id.* at 2438. This hindered the efforts of the IRS to trace the funds in question. *Id.* This Court finds these steps are the affirmative acts required to satisfy the conduct requirement in a § 523(a)(1)(C) analysis. The Tax Court opinion provides firm evidence of affirmative acts engaged in by the Debtor in an effort to evade or defeat collection of her taxes.

### VI. CONCLUSION

The findings by the Tax Court establish, by a preponderance of the evidence, all of the requisite elements to determine the Debtor engaged in affirmative acts to evade or defeat her tax liability. The Debtor engaged in intra-family transfers of money and property for little or no consideration while under the threat of a lawsuit. *See Griffith,* 206 F.3d at 1396. This fraudulent behavior is sufficient to find her tax debt nondischargeable under § 523(a)(1)(C).

The Tax Court also established the amount of Debtor's tax obligation. Specifically, the total unpaid tax attributable to Debtor individually (not as a transferee) is $67,672.00.[26] This amount is nondischargeable under § 523(a)(1)(C).

Accordingly, it is

ORDERED, ADJUDGED AND DECREED the Court grants the Motion by the United States for Entry of Summary Judgment on Issue of 11 U.S.C. § 523(a)(1)(C) and finds the Debtor's personal tax liability, in the amount of $67,672.00, is excepted from discharge under 11 U.S.C. § 523(a)(1)(C). A separate judgment consistent with this opinion will be entered in favor of the IRS.

---

25. *See Howard,* 167 B.R. at 688.

26. While the Tax Court determined the Debtor is liable as a transferee for up to $399,535.00, this Court previously determined transferee liability under 28 U.S.C. § 6901 is a debt, not a tax, and, therefore, the transferee liability obligation is not excepted from discharge under § 523. *Pert,* 201 B.R. at 320. As this summary judgment Motion concerns § 523(a)(1)(C), the debt attributable solely to transferee liability would not be excepted from discharge.