IN RE:  Leroy Charles GRIFFITH, Debtor.

Leroy Charles Griffith, Plaintiff-Appellant,

v.

United States of America, Defendant-Appellee.

No. 97-4845.

United States Court of Appeals,

Eleventh Circuit.

March 24, 2000.

Appeal from the United States District Court for the Southern District of Florida. (No. 94-0147-CV-LCN), Lenore C. Nesbitt, Judge.

Before ANDERSON, Chief Judge, and TJOFLAT, EDMONDSON, COX, BIRCH, DUBINA, BLACK, CARNES, BARKETT, HULL, MARCUS and WILSON, Circuit Judges.

BIRCH, Circuit Judge:

This appeal requires us to determine the scope of nondischargeability of tax debts under 11 U.S.C. § 523(a)(1)(C).  Specifically, we requested the parties in this case to address the question of whether § 523(a)(1)(C) renders a tax debt nondischargeable in bankruptcy where the debtor has willfully attempted in any manner to evade or defeat the payment of a tax but has not in any manner willfully attempted to evade or defeat the assessment of a tax.  Because we find that § 523(a)(1)(C) does render nondischargeable tax debts where the debtor has willfully attempted in any manner to evade or defeat the payment of a tax and because the bankruptcy and district courts did not clearly err in finding that Debtor Leroy Charles Griffith's actions constituted a willful attempt to evade or defeat the payment of a tax, we AFFIRM the finding that Griffith's tax debts are nondischargeable.

*I. Background*

We adopt and reiterate the factual background as written by the panel that originally heard this case:

Plaintiff-appellant Leroy Charles Griffith ("Griffith") has long been the sole owner of several corporations primarily involved in the adult entertainment industry.  These corporations included, among

others, Gayety Theaters, Inc. ("Gayety"), Ell Gee, Inc., and Paris Follies, Inc. As subchapter S corporations, the income and deductions pass through to the shareholders, so Griffith's personal income tax returns reflect the performance of his corporations. An IRS audit revealed that Griffith had substantially underpaid his taxes for the years 1969, 1970, 1972-1976, and 1978. Griffith petitioned the Tax Court for a reconsideration of the amount owed. In a detailed opinion issued in September of 1988, the Tax Court found that Griffith had indeed underpaid his taxes, but did not impose fraud penalties because the government's evidence with respect to fraud did not satisfy the clear and convincing burden of proof. *See Griffith v. Commissioner,* 56 T.C.M. (CCH) 220 (1988), *modified,* 56 T.C.M. (CCH) 1263 (1989). With interest, the amount of taxes owed at the time that Griffith filed for bankruptcy in this case was close to $2,000,000. *See In re Griffith,* 161 B.R. 727, 730 (Bankr.S.D.Fla.1993), *aff'd,* 210 B.R. 216 (S.D.Fla.1997), *rev'd,* 174 F.3d 1222 (11th Cir.), *vacated and reh'g en banc granted,* 182 F.3d 1297 (11th Cir.1999).

Less than a month after the Tax Court issued its decision, on October 10, 1988, NuWave, Inc., was incorporated, with Griffith's long-time live-in girlfriend, Linda, as sole shareholder. On June 8, 1989, Linda and Griffith married, and Griffith signed an antenuptial agreement in which he transferred all of his stock in Gayety, Ell Gee, and Paris Follies to Linda and himself as tenants in the entirety, along with $390,000 in promissory notes. Assets from another corporation that he owned were transferred to NuWave, Inc. The IRS made an assessment against Griffith on September 28, 1989. However, the assets transferred pursuant to the antenuptial agreement were insulated from being levied upon because assets held by tenants in the entirety cannot be levied upon without a judgment against both owners. Additionally, Griffith no longer had any ownership interest in those assets transferred to NuWave, Inc.

On January 15, 1993, Griffith filed a Chapter 7 bankruptcy petition, as well as a complaint to determine the dischargeability of his tax debts. The government argued that the tax debts were nondischargeable under 11 U.S.C. § 523(a)(1)(C), which prohibits discharge of taxes "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." The

2

bankruptcy court agreed. Although there was no evasion with respect to the assessment of the tax, the bankruptcy court, looking to the "badges of fraud," found that Griffith's conduct occurring after the Tax Court issued its decision amounted to a willful attempt to evade or defeat the payment of the tax debt. *See In re Griffith,* 161 B.R. at 733-34. The court specifically rejected Griffith's argument that §§ 523(a)(1)(C) applies only to conduct constituting evasion of the assessment of a tax; the court held that the phrase "in any manner" was sufficiently broad to include conduct constituting evasion of the payment of a tax. *See id.* at 732-33.

Subsequent to the bankruptcy court's decision, we decided *In re Haas,* 48 F.3d 1153 (11th Cir.1995). Haas had filed accurate tax returns, but had not paid the taxes due; instead, he used his income to pay business and personal debts. Upon filing for bankruptcy, he sought discharge of the tax debts, which the government opposed on the basis of § 523(a)(1)(C). Noting the "fresh start" policy underlying the bankruptcy laws, the *Haas* panel found that a literal reading of the statute, including the broad phrase "in any manner," would conflict with the goals of bankruptcy. *See id.* at 1156. Thus, the panel looked to provisions of the Internal Revenue Code ("I.R.C.") and found that they referred to "willfully attempting in any manner to evade or defeat any tax *or the payment thereof.*" *See id.* (quoting 26 U.S.C. § 6531(2)) (emphasis added); *see also id.* (quoting 26 U.S.C. §§ 6653, 6672, & 7201, which contain the identical language as that emphasized in the above quote). The panel relied on the absence of the phrase "or the payment thereof" from § 523(a)(1)(C) to conclude that the provision precludes discharge when the debtor "willfully attempted ... to evade or defeat" the tax at the assessment stage, but does not preclude discharge when there has been such evasion at the payment stage. *See id.* at 1159. Thus, Haas' debt was dischargeable.

Griffith appealed the bankruptcy court's decision in the instant case to the district court, relying heavily on the intervening decision in *Haas.* The district court affirmed the bankruptcy court's decision. *See In re Griffith,* 210 B.R. 216, 220 (S.D.Fla.1997), *rev'd,* 174 F.3d 1222 (11th Cir.), *vacated and reh'g en banc granted,* 182 F.3d 1297 (11th Cir.1999). In so doing, it distinguished *Haas.* The district court found that, unlike Haas, Griffith had done more than simply pay other debts before paying his back taxes; Griffith had

3

engaged in a fraudulent transfer of assets in order to prevent collection of his tax debt. *See id.* at 219. Griffith appealed to this court.[1]

## II. Discussion

This case requires us to interpret § 523(a)(1)(C), which states that:

(a)     A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1)     for a tax or customs duty—

           ...

(C)     with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax....

We do not conduct this enterprise against an empty slate. Several courts, including this court in *Haas,* have addressed the application of § 523(a)(1)(C) to persons who failed to pay their tax debts before entering bankruptcy. While most of the courts that have addressed this issue agree with our primary holding in *Haas* "that a debtor's failure to pay his taxes, alone, does not fall within the scope of section 523(a)(1)(C)'s exception to discharge in bankruptcy," 48 F.3d at 1158, our second holding, that "the phrase 'attempt[s] in any manner to evade or defeat such tax' does not imply attempts to evade or defeat payment thereof," *id.* at 1159 (alteration in original), has been more controversial. *See, e.g., In re Fegeley,* 118 F.3d 979, 983 (3d Cir.1997) (accepting first holding from *Haas* but finding that nonpayment of taxes is relevant to the question of whether tax debts are nondischargeable under § 523(a)(1)(C)); *In re Birkenstock,* 87 F.3d 947, 951-52 (7th Cir.1996) (accepting first holding from *Haas* but holding that "where nonpayment is coupled with a pattern of failing to file tax returns or where a defendant takes other measures to conceal assets or income from the IRS, a court may reasonably find that the debtor sought to 'evade or defeat' his tax liabilities") (citations omitted); *Dalton v. IRS,* 77 F.3d 1297, 1301 (10th Cir.1996) (accepting first holding from *Haas* but finding

---

[1]The panel rejected Griffith's contention that the bankruptcy court abused its discretion in allowing the government to amend to assert specifically its § 523(a)(1)(C) counterclaim. We reaffirm that holding.

that "any statutory interpretation of 'evade and defeat' which relieves the dishonest debtor who conceals assets to avoid the payment or collection of taxes, but which penalizes the same dishonesty to avoid assessment, would be an absurd result"); *see also In re Tudisco,* 183 F.3d 133, 137 (2d Cir.1999) (refusing to pass on question of whether mere nonpayment is sufficient to render tax debts nondischargeable under § 523(a)(1)(C) but, instead, finding that the fact that the debtor had "engaged in more than 'mere nonpayment' " meant that he had attempted to evade or defeat his taxes). *But see In re Bruner,* 55 F.3d 195, 200 (5th Cir.1995) (rejecting both holdings of *Haas* ). Because we find that § 523(a)(1)(C) renders nondischargeable tax debts where the debtor willfully attempted to evade or defeat payment of taxes and because we find that the bankruptcy court did not err in finding that Griffith had willfully attempted to evade payment of his taxes, we affirm the district court's affirmance of the bankruptcy court's finding of nondischargeability.

*A.        Statutory Interpretation*

Interpretation of a statute begins "with the language of the statute itself." *United States v. Ron Pair Enters.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). As a general rule, if the language of the statute is plain, then our interpretative function ceases and we should " 'enforce [the statute] according to its terms.' " *Id.* (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)).

In interpreting the language of a statute, we generally give "the 'words used' their 'ordinary meaning.' " *Moskal v. United States,* 498 U.S. 103, 108, 111 S.Ct. 461, 465, 112 L.Ed.2d 449 (1990) (quoting *Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962)). We also use interpretative tools, the "canons of construction," which "are no more than rules of thumb that help courts determine the meaning of legislation." *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). Among these canons of construction are the principles "that Congress is presumed to be aware of judicial interpretations of a statute," *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 524, 104 S.Ct. 1188, 1195, 79 L.Ed.2d 482 (1984), *superseded by statute on other grounds,* 11 U.S.C. § 1113 (1984), that "courts should

disfavor interpretations of statutes that render language superfluous," *Connecticut Nat'l Bank,* 503 U.S. at 253, 112 S.Ct. at 1149, and that "[w]e assume that Congress is aware of existing law when it passes legislation," *Miles v. Apex Marine Corp.,* 498 U.S. 19, 32, 111 S.Ct. 317, 325, 112 L.Ed.2d 275 (1990). "Legislative history can be a legitimate guide to a statutory purpose obscured by ambiguity." *Burlington N. R.R. Co. v. Oklahoma Tax Comm.,* 481 U.S. 454, 461, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987).

The Government, focusing on the clause "in any manner," argues that the plain language of § 523(a)(1)(C) renders nondischargeable tax debts where the debtor willfully attempts to avoid either assessment or collection of a tax. We "generally construe the statutory exceptions to discharge in bankruptcy 'liberally in favor of the debtor' " in order to "ensure[ ] that the 'honest but unfortunate debtor' is afforded a fresh start." *In re Miller,* 39 F.3d 301, 304 (11th Cir.1994) (quoting, respectively, *In re Tully,* 818 F.2d 106, 110 (1st Cir.1987) and *Birmingham Trust Nat'l Bank v. Case,* 755 F.2d 1474, 1477 (11th Cir.1985), *superseded on other grounds by* Pub L. No. 98-353, 98 Stat. 333 (1984)). As we discussed in *Haas,* however, the broadest possible reading of § 523(a)(1)(C), *i.e.,* that a tax debt is nondischargeable whenever "a debtor had both an awareness of his duty to pay his taxes and the present ability to pay them but nonetheless failed to satisfy that duty," would render virtually all tax debts nondischargeable. 48 F.3d at 1155. To read § 523(a)(1)(C) to render tax debts nondischargeable in cases, like *Haas,* where the debtor merely failed to pay his taxes would extinguish the general rule in favor of dischargeability of tax debts. Thus, we reaffirm our first holding from *Haas* that mere nonpayment of taxes is insufficient to establish the exception found in § 523(a)(1)(C). *See id.* at 1158.

We turn to the question of whether § 523(a)(1)(C) applies to a willful attempt to evade or defeat collection of taxes where the debtor engaged in affirmative acts other than mere nonpayment of the taxes. Our conclusion in *Haas* that § 523(a)(1)(C) does not apply to attempts to evade or defeat collection of taxes was premised, in part, on the phrasing of § 523(a)(1)(C) as compared with four provisions of the Internal Revenue Code. Unlike § 523(a)(1)(C), which never mentions either "collection" or "payment," these four

provisions each address willful attempts "in any manner to evade or defeat any tax *or the payment thereof.*" I.R.C. § 6531(2) (emphasis added); *see also* I.R.C. §§ 6653(2), 6672(a), 7201. Applying the canons of interpretation that Congress is presumed to know the content of existing, relevant law, *Haas,* 48 F.3d at 1157, and that, "[w]here Congress knows how to say something but chooses not to, its silence is controlling," *id.* at 1156, we held that Congress must have consciously chosen not to include the language "or the payment thereof" in § 523(a)(1)(C), *id.* at 1157. In reaching this conclusion, we acknowledged that, because § 523(a)(1)(C) is part of a separate statute and title than the I.R.C., where these other provisions are found, these canons of construction are somewhat weaker, but we found that, in light of the prominence of I.R.C. § 7201, we could presume that Congress was aware of the language in § 7201 but consciously chose not to mirror it. *Id.* at 1157.[2]

While we believe that the application of the canons of construction produced a plausible interpretation of § 523(a)(1)(C) in *Haas,* we now conclude that the more reasonable interpretation of § 523(a)(1)(C) is that it renders nondischargeable tax debts where the debtor engaged in affirmative acts

---

[2]One possibility not addressed by either party is that the language in I.R.C. § 7201 reflects the relationship between I.R.C. § 7201, which makes it a felony for "[a]ny person [to] willfully attempt[ ] in any manner to evade or defeat any tax imposed by this title or the payment thereof," and I.R.C. § 7203, which makes it a misdemeanor for "[a]ny person required under this title to pay any estimated tax or tax ... [to] willfully fail[ ] to pay such estimated tax or tax...." The Supreme Court, addressing the predecessor statutes to §§ 7201 and 7203, noted that there was not a bright line between the conduct covered by the two statutory provisions. *See Spies v. United States,* 317 U.S. 492, 497, 63 S.Ct. 364, 367, 87 L.Ed. 418 (1943) ("The difference between willful failure to pay a tax when due, which is made a misdemeanor, and willful attempt to defeat and evade one, which is made a felony, is not easy to detect or define."). By including the language "or the payment thereof" in § 7201, Congress ensured that courts would not incorrectly create a sharp demarcation between the conduct covered by § 7201 (i.e., failure to pay a tax) and the conduct covered by § 7203 (i.e., evasion of a tax, whether by evasion of assessment or collection), but, instead, would use a more subtle distinction to determine whether failure to pay constituted a misdemeanor, a felony, or neither. *See id.* at 499, 63 S.Ct. 364 ("Willful but passive neglect of the statutory duty may constitute the lesser offense, but to combine with it a willful and positive attempt to evade tax in any manner or to defeat it by any means lifts the offense to the degree of felony."); *see also Sansone v. United States,* 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965) (applying *Spies* to §§ 7201 and 7203). In contrast to the I.R.C., there is no provision like § 7203 in the bankruptcy code and, thus, Congress may have deemed it less necessary to include the language "or the payment thereof" in § 523(a)(1)(C). *See also In re Toti,* 24 F.3d 806, 808-09 (6th Cir.1994) (rejecting claim that § 523(a)(1)(C) only applies to behavior covered by § 7201 and finding that § 523(a)(1)(C) renders nondischargeable tax debts where debtor was convicted under § 7203).

seeking to evade or defeat collection of taxes. This interpretation accords well with the interests that Congress was attempting to balance in enacting the predecessor statute to § 523(a)(1)(C): to permit "an honest but financially unfortunate debtor [to make] a fresh start unburdened by what may be an overwhelming liability for accumulated taxes," while avoiding the creation of "a tax evasion device." S.Rep. No. 89-1158 (1966), reprinted at 1966 U.S.C.C.A.N. 2468. As the Tenth Circuit recognized, an interpretation of § 523(a)(1)(C) that permits a debtor to engage in affirmative behavior in order to evade collection of taxes serves neither of those purposes, but, instead, advantages *dishonest* debtors. *See Dalton,* 77 F.3d at 1301.

Principles of statutory interpretation also support our conclusion that § 523(a)(1)(C) renders nondischargeable tax debts where the debtor engaged in affirmative acts seeking to evade payment of taxes. As other courts have noted, interpreting § 523(a)(1)(C) so that it does not apply to attempts to evade payment of taxes would mean that the phrase "willfully attempted in any manner to evade or defeat taxes" would only apply to persons who filed a fraudulent return. *See id.* at 1301 & n. 4; *In re Jones,* 116 B.R. 810, 815 & n. 1 (Bankr.D.Kan.1990) (noting that, because nondischargeability of tax debts due to failure to file a tax return is covered by § 523(a)(1)(B)(i), "this court is hard-pressed to conceive how a debtor might willfully attempt to evade or defeat a tax without also filing a fraudulent return"). Such an interpretation, however, would render the phrase "willfully attempted in any manner to evade or defeat taxes" superfluous because § 523(a)(1)(C) expressly renders nondischargeable tax debts where the debtor filed a fraudulent tax return. *See Dalton,* 77 F.3d at 1301; *Jones,* 116 B.R. at 815. Thus, concluding that § 523(a)(1)(C) renders nondischargeable willful attempts to evade or defeat payment of taxes conforms with the principle that we "disfavor interpretations of statutes that render language superfluous," *Connecticut Nat'l Bank,* 503 U.S. at 253, 112 S.Ct. at 1149; *see also In re Gilder,* 122 B.R. 593, 595 (Bankr.M.D.Fla.1990) (noting that prongs of § 523(a)(1)(C) should be "read in the disjunctive"). Finally, we note that courts have traditionally been reluctant to limit the means by which a taxpayer may "willfully attempt in any manner to evade or defeat" taxes. *See Spies,* 317 U.S. at 499, 63 S.Ct. at 368 ("Congress did not define or limit the methods by which

8

a willful attempt to defeat and evade might be accomplished and perhaps did not define lest its effort to do so result in some unexplained limitation. Nor would we by definition constrict the scope of the Congressional provision that it may be accomplished 'in any manner'."); *see also Dalton,* 77 F.3d at 1301 (applying *Spies* to interpretation of § 523(a)(1)(C)); *Toti,* 24 F.3d at 809 (finding that "willfully attempted to evade" taxes includes "voluntary, conscious, and intentional evasions of tax liabilities," including conscious failure to file a return and to pay taxes).

Accordingly, while we reaffirm the primary holding of *Haas* that mere nonpayment of taxes, without more, does not constitute a willful attempt to evade or defeat taxes under § 523(a)(1)(C), we hold that § 523(a)(1)(C) does render nondischargeable tax debts where the debtor engaged in affirmative acts constituting a willful attempt to evade or defeat payment of taxes.

B.      *Application*

In light of our conclusion that § 523(a)(1)(C) does apply to debtors who willfully attempt to evade or defeat payment of taxes, we must address the question of whether Griffith's actions constitute a willful attempt to evade or defeat his taxes. The Government bears the burden to prove, by a preponderance of the evidence, that a particular claim is nondischargeable under § 523(a). *See Grogan v. Garner,* 498 U.S. 279, 287-88, 111 S.Ct. 654, 659-60, 112 L.Ed.2d 755 (1991). The willful attempt to evade prong of 523(a)(1)(C) includes "both a conduct requirement (that the debtor sought 'in any manner to evade or defeat' his tax liability) and a mental state requirement (that the debtor did so 'willfully')." *Birkenstock,* 87 F.3d at 951 (quoting § 523(a)(1)(C)). It is undisputed that Griffith engaged in intra-family transfers of property for little to no consideration.[3] In light of our holding in this case, we find that the district court did not err in affirming the bankruptcy court's finding that Griffith had engaged in conduct covered by § 523(a)(1)(C). *See id.* at 952 (affirming bankruptcy court's finding of an attempt to evade taxes where debtors transferred property into

---

[3]The bankruptcy court also noted that Griffith engaged in "personal-corporate commingling of funds" but considered that only as evidence of Griffith's intent to evade his tax liability. *Griffith,* 161 B.R. at 733.

trust for no consideration while still maintaining control over the property); *Dalton,* 77 F.3d at 1303 (finding that transfer of property to betrothed for insufficient consideration with knowledge of tax investigation supported finding of willful attempt to evade or defeat taxes); *In re Sternberg,* 229 B.R. 238, 248 (S.D.Fla.1998) (finding that transfer of property to wife for little consideration while maintaining control over the property constituted a willful attempt to evade or defeat taxes); *Jones,* 116 B.R. at 815 (finding that transfer of property to others constituted an attempt to evade or defeat taxes).

Several other courts use a three-prong test to determine whether a debtor's failure to pay his tax liability was willful under § 523(a)(1)(C): whether "(1) the debtor had a duty under the law, (2) the debtor knew he had that duty, and (3) the debtor voluntarily and intentionally violated that duty." *Bruner,* 55 F.3d at 197; *see also Birkenstock,* 87 F.3d at 952 (stating same test as two prongs).[4] Applying this test, we find that the district court did not err in affirming the bankruptcy court's finding of willfulness. It is undisputed that Griffith had a duty under the law to pay taxes and that Griffith knew that he had that duty. On the issue of whether Griffith voluntarily and intentionally violated that duty, the bankruptcy court, in addition to noting that both Griffith and his wife Linda were "evasive and lacked that ring of forthrightness reflective of an open and credible witness," *Griffith,* 161 B.R. at 734, looked to the traditional "badges of fraud" to determine that Griffith's conduct constituted a willful attempt to evade his tax obligations, *id.* at 733. The bankruptcy court's finding that Griffith's transfer of property to Linda implicated several badges of fraud, including being "an exchange to a family member, during a period of serious financial difficulty, for inadequate consideration," *id.* at 734, is not clearly erroneous. These findings are sufficient to justify a finding of fraud and, thus, to support the finding that Griffith's conduct was willful. *See Sternberg,* 229 B.R. at 246 ("While a single badge

---

[4]We note that the fact that Tax Court found that the Government had not proved that Griffith had engaged in fraud, *see Griffith v. Commissioner of Internal Revenue,* 56 T.C.M. (CCH) 220, *modified,* 56 T.C.M. (CCH) 1263 (1989), does not bar the bankruptcy court's finding of willfulness in this case. Unlike in the bankruptcy case, where the Government's burden of proof is preponderance of the evidence, the Government's burden of proof as to the fraud claims in the Tax Court was the clear and convincing evidence standard. *See id.* Additionally, the Tax Court's analysis does not address Griffith's transfers of property to Linda or other actions taken by Griffith post-assessment of the taxes at issue in this case. *See id.*

of fraud may amount to only a suspicious circumstance, a combination of them will justify a finding of fraud.").

## III. Conclusion

We AFFIRM the district court's order affirming the bankruptcy court's determination that Griffith's tax debts are nondischargeable under § 523(a)(1)(C).