In re John C. **GILLIS** and Judith D. Gillis, Debtors.

**John C. Gillis and Judith D. Gillis, Plaintiffs,**

**v.**

**Internal Revenue Service, Defendant.**

Bankruptcy No. 97–50634.
Adversary No. 98–05017A–JDW.

United States Bankruptcy Court,
S.D. Georgia,
Waycross Division.

Aug. 7, 2000.

William S. Orange, III, Brunswick, Georgia, for John C. Gillis and Judith D. Gillis.

Brian P. Kaufman, U.S. Department of Justice, Washington, D.C., for Internal Revenue Service.

## MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on complaint of Debtor John C. Gillis ("Plaintiff") to determine dischargeability of a debt to the Internal Revenue Service ("Defendant" or "IRS"). This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(I). After considering the pleadings, evidence and applicable authorities, the Court enters the following findings of fact and conclusions of law in compliance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Plaintiff filed for protection under Chapter 7 of the Bankruptcy Code on June 12, 1997. As of June 11, 1997, Plaintiff owed the IRS $514,880.94, a figure that includes income tax liabilities and statutory additions. On June 11, 1997, Defendant's agent, IRS Officer Jeanne M. Henry, prepared a levy pursuant to an Order for Entry on [Plaintiff's] Premises to Effect Levy entered by the United States District Court for the Southern District of Georgia on May 30, 1997. Officer Henry executed the levy on June 11, 1997, presenting Plaintiff with a copy of the levy and the district court's order at Plaintiff's residence. With the assistance of other IRS employees, Officer Henry then attempted to search Plaintiff's residence in order to inventory and seize personal property in satisfaction of Plaintiff's tax debt.

Officer Henry failed in her attempt, however, because Plaintiff refused to allow her to enter. Furthermore, Plaintiff ordered five or six of his employees to "stand guard" in front of all of the doors to his residence in order to prevent Officer Henry and the IRS employees assisting her from entering. Plaintiff did not desist even after his own attorney informed him that he was in violation of the law.

Plaintiff incurred part of his outstanding income tax liability because the IRS concluded that he erroneously reported his income for tax years 1989, 1990, and 1991, and because he did not pay a balance owed for tax year 1993. Another portion of the liability resulted when Plaintiff relied on bad advice he received from a certified public accountant who failed to understand a provision of the federal tax code pertaining to the taxation of insolvent taxpayers' capital gains. Yet another portion of the liability was based on assessments made by the IRS following audits in which certain deductions were disallowed and cer-

tain income items were determined to be unreported.

In 1991, Plaintiff transferred all his assets, less personal household property, to members of his immediate family, or to corporations wholly owned by members of his immediate family. Transfers included 221.59 acres of real estate and the assets of Midway Steel and Machinery, Inc., a defunct Georgia corporation of which Plaintiff was sole shareholder, conveyed to Gillis Land Company, a corporation wholly owned by Plaintiff's two children, on April 4, 1991, for no consideration.[1] While Plaintiff owns no interest in Gillis Land Company and is not a corporate officer, he is the company's general manager. Plaintiff is also general manager of Kountry Boy Equipment, Inc., and J and J Metal Fabrication, Inc. These corporations are also wholly owned by Plaintiff's children, and Plaintiff holds neither equity interest nor corporate office in them.

While Plaintiff made these transfers to avoid the consequences of the financial difficulties into which he was descending, it has not been proven that he made them specifically for the purpose of avoiding an IRS tax assessment or levy.[2] Plaintiff admits, however, that he ceased drawing his salary as general manager of the three corporations, and began having his personal living expenses paid through the operating account of J and J Metal. While Plaintiff admitted that he took this step to avoid a levy, there was no proof to dispute his contention that he had the right to make such an election.

### Conclusions of Law

 The Court will deny discharge of Plaintiff's outstanding tax liabilities based on the Eleventh Circuit's interpretation of 11 U.S.C. § 523(a)(1)(C)[3] in *In re Griffith*, 206 F.3d 1389 (11th Cir.2000) (en banc), an opinion announced following the close of evidence in this case.[4] In *In re Griffith*, the Eleventh Circuit held that Section 523(a)(1)(C) renders tax debts nondischargeable if "the debtor engaged in affirmative acts constituting a willful attempt to evade or defeat payment of [such] taxes." *In re Griffith*, 206 F.3d at 1395–96. When Plaintiff refused to allow Officer Henry to enter his premises to execute the levy prepared pursuant to the district court's order, he engaged in an affirmative act that constituted an attempt to defeat payment of his taxes. Section 523(a)(1)(C) as construed by *In re Griffith* thus applies to Plaintiff's conduct. Furthermore, Plaintiff's actions were willful because he know-

1. Plaintiff's personal residence is located on a four acre parcel of the 221.59 acres transferred to Gillis Land Company. On April 8, 1991, Plaintiff transferred a life estate in the four acre parcel and residence to his wife.

2. It should also be noted that these transfers were made prior to the attachment of any IRS tax liens.

3. Section 523(a)(1)(C) provides that

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt for a tax ... with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax[.]

4. At the time of trial, there was a question as to whether a discharge could be denied *solely* because of a debtor's conduct in attempting to evade or defeat *payment* of taxes. The Eleventh Circuit's first opinion rendered by a pan-

el of three judges in *In re Griffith* was open to the interpretation that a creditor would have to prove that a debtor attempted to evade or defeat *assessment* of a tax liability, rather than mere payment or collection in order to prove non-dischargeability under Section 523(a)(1)(C). While Defendant disagreed with this interpretation of *In re Griffith*, it offered evidence of evasion at trial as to *both* assessment and payment. While the evidence as to evasion in the assessment was questionable in many respects, the evidence as to evasion in the payment was undisputable. In the en banc opinion, the Eleventh Circuit resolved the question as to whether evasion in the payment, without more, could serve as the basis for a finding of nondischargeability. As a result of the en banc opinion, because proof of evasion in the assessment is not now essential, and because proof of evasion as to payment is undisputable, there is no need to analyze the evidence as to evasion in the assessment.

ingly and purposefully ignored a district court order authorizing Officer Henry to execute the levy, and he persisted in his conduct despite a warning from his own attorney that his actions violated the law.

Some further discussion of the court's interpretation of *Griffith* is necessary to insure that the rationale of this decision is fully explained as required by Fed. R.Bankr.P. 7052. While Plaintiff's conduct on June 11, 1997, was an unambiguous expression of willful intent to evade payment of taxes, his conduct prior to June 11, 1997, was based in part on professional advice that he believed to be reliable, no matter how flawed that advice might have been. While Plaintiff's actions prior to June 11, 1997 may have amounted to evasion of the assessment and payment of taxes, his actions during that period may have lacked the maleficent spirit of "willfulness" that Congress required in Section 523(a)(1)(C).[5] Thus, if not for the standoff Plaintiff staged against the IRS on June 11, 1997, the Court might not deny Plaintiff's discharge in this case. Since this singular event seems to fully satisfy the Defendant's burden of proof, there is no cause for further deliberation as to whether one or more of the preceding acts might also support Defendant's position that Debtor's discharge should be denied. While the Court does not offer any conclusions here as to whether other acts of Debtor would satisfy the requirements of

Section 523(a)(1)(C), it can be said that no one of those acts was so unambiguously fraudulent or willful as to beg for inclusion in these findings.[6]

This Court interprets *Griffith* to hold that proof of a singular act is sufficient to satisfy the Defendant's burden of proof. If *Griffith* had intended to require proof of a course of conduct of such a meaningful and continuous nature as to actually prevent the collection of the tax, then Debtor's home place standoff with IRS agents might not satisfy that requirement. The obstacle imposed by Debtor was easily overcome by IRS agents. Further, the purpose of the visit was to levy on personal property contained in Debtor's residence. No evidence has been offered as to the value of the property, and Debtor's living circumstance would not suggest that the levy would yield any substantial monetary value. In fact, Debtor contended, but did not prove, that all of the household goods were owned by his spouse, a self serving but not improbable circumstance.

Since this Court is not authorized to expand the holding of *Griffith* to require more than one act or event, the result is that application of this law to the facts in this case may be said to have caused Debtor to be liable for a debt in excess of one half million dollars as a result of one afternoon of ill considered misconduct. While

5. *See In re Birkenstock*, 87 F.3d 947, 951–52 (7th Cir.1996) ("willfulness" in § 523(a)(1)(C) requires "voluntary, conscious, and intentional" evasion).

6. There is one other circumstance that edges close to being an unambiguous attempt to evade payment of taxes. The Court has found that Plaintiff ceased drawing his salary to prevent its seizure in a levy by Defendant. The problem is that there was no proof to dispute Plaintiff's contention that he had the right to make such an election. A dilemma is posed by the possibility that conduct, not otherwise illegal, might serve as the basis for an objection to discharge under this section. According to Section 523(a)(1)(C), the evasive conduct must be either fraudulent *or* willful. While failing to prove any fraudulent intent,

Defendant has shown that the conduct of shielding his salary from levy was willful and done for the specific purpose proscribed by the Code. The Code specifies other circumstances where conduct, otherwise legal, results in a nondischargeability determination, such as alimony and support, student loans, and certain taxes. But, as noted elsewhere in this opinion, the conduct at issue here is neither related to the creation of the debt nor related to the bankruptcy proceeding. The *Griffith* decision does not directly address this distinction. Since there is one occurrence of conduct in this case which seems to unequivocally satisfy the standard set by *Griffith*, it would be improper for this Court to offer a resolution of this additional issue.

it is true that the *Griffith* opinion uses the word "acts," the word is coupled with the phrase "constituting a willful attempt" thus connoting a singular occurrence. The *Griffith* opinion seems to interpret the Code verbiage "willfully attempted in any manner" to require no more than a singular event.[7] If the consequence in this case were less substantial, or if the singular event were more substantive, the disparity between the offense and the penalty might be less conspicuous.

Neither the Code nor the case law invite this Court to coordinate the penalty in this case with the offense of the debtor. While this feature of the law is present in other nondischargeability provisions, there is usually some correspondence between the creation of the debt, such as fraud, malicious injury, student loans, alimony, or child support or some other misconduct by a debtor in the course of the bankruptcy proceedings such as omission of a creditor, fraudulent schedules, false oaths or concealment of assets. The unique distinction posed by the circumstances in this case is the prospect of a nondischargeability determination arising as a consequence of conduct separate from the creation of the debt and not associated with any aspect of the bankruptcy proceeding.

In conclusion, the *Griffith* standard is clear and unambiguous. Debtor "attempted" by the commission of a "willful act" to evade payment of taxes. Accordingly, an order in accordance with this opinion denying discharge of Debtor's liability to Defendant will be entered on this date.

---

**7.** If a more expansive definition of "attempt" is to be offered, it should not originate in this Court.