**In re PASSAVANT, Raymond B., Debtor.**

**Raymond B. Passavant, Plaintiff,**

**v.**

**U.S. of America, Internal Revenue Service, Defendant.**

**Bankruptcy No. 00–05126–6J7.**
**Adversary No. 00–00208.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Jan. 27, 2003.

**880**

Norman L. Hull, Orlando, FL, for Debtor.

Leigh R. Meininger, Orlando, FL, Chapter 7 Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

KAREN S. JENNEMANN, Bankruptcy Judge.

At the trial in this adversary proceeding held on October 23, 2002, the debtor argues that his federal tax liabilities for the years 1987 through 1990 are dischargeable. The United States objects to the discharge pursuant to Section 523(a)(1)(C) of the Bankruptcy Code,[1] contending that the debtor, Raymond B. Passavant, willfully attempted to evade or defeat such taxes.

From 1987 through 1990, the debtor, together with others, conducted an illegal telemarketing operation in south Florida, using various subsidiary corporate identities to effectuate their criminal scheme. The companies would send postcards to individuals indicating that the recipient had been selected to receive a valuable award, including, among other things, a car or a vacation, for participating in a national promotion. The postcards instructed the recipients to call a certain telephone number to receive details about the offer. Once the recipients called, the company informed them that in order to become eligible to receive one or more of the valuable awards, they must purchase either a consumer buying club memberships, a water purifier or vitamins. The company made false and fraudulent representations to the recipients to induce them into purchasing these products. Due to the expense of the products, the companies suggested to the customers that they pay for the product with a credit card. The use of a credit card permitted the company immediate access to the funds.

However, the customers typically never received the product or their valuable award, or received a product that was different than that purchased. Once the customers called to complain, the company assured them that any problem would be corrected in an effort to induce the customer to forbear from canceling their order. Overall, the defendants made in excess of $3,000,000 in sales and $2,000,000 from the banks that processed the credit card charges. Due to the success of the illegal operation, these companies made

---

1. Unless otherwise stated, all references to the Bankruptcy Code refer to Title 11 of the United States Code.

substantial distributions to the debtor, particularly during 1988 and 1989.

During this period, from 1987 to 1990, Mr. Passavant failed to timely file a tax return. The debtor made no attempt to pay any of the outstanding tax liabilities with the exception of one payment for $7,500 for payment of his 1987 taxes, although he had the means to pay. Nor did any of the corporations he controlled make any estimated tax payments on his behalf. Rather, every year, the debtor simply requested extensions of time to file tax returns, although the debtor lived a very comfortable life during those years and clearly could have paid his taxes.

In 1989, the Federal Bureau of Investigation began a criminal investigation into the fraudulent activities of the companies. In connection with this investigation, the FBI seized all records, including the financial records of the distributions made to the debtor. Mr. Passavant was indicted on six separate criminal counts in September 1992. He pled guilty to the charges in February 1994, and served approximately 59 months in federal prison on the charges. He started serving time in prison in May 1994, and was released four years later.

While incarcerated, Mr. Passavant filed returns for tax years 1987 through 1990. Specifically, Mr. Passavant filed tax returns for 1988 and 1989 on April 17 and April 24, 1995, respectively, and filed his returns for 1987 and 1990 on April 8, 1996. Mr. Passavant's tax returns were prepared by a certified public accountant who testified at trial. The accountant stated that he was requested to prepare the tax returns by Mr. Passavant after he had started serving his federal prison time. In order to prepare the tax returns for 1988 and 1989, the accountant reviewed the financial records seized by the FBI at the Federal Courthouse located in Bro-

ward County, Florida, sometime in the fall or winter of 1994. About one year after the accountant prepared the debtor's returns for 1988 and 1989, he prepared the debtor's tax returns for 1987 and 1990. Significantly, the accountant prepared these returns without reviewing any financial records in the government's control.

Pursuant to the tax returns belatedly filed by the debtor, he had substantial income in each of the four years in question. The debtor's income for 1987 was $125,000; the debtor's income for 1988 was $977,567; the debtor's income for 1989 was $500,000; and the debtor's income for 1990 was $75,000. In connection with the significantly higher income claimed by the debtor during the years 1988 and 1989, the debtor testified that in order to avoid any possibility of further criminal liability which could arise from underestimating his income, he overstated his income for those years by at least 50 percent. Accordingly, while it is certainly possible that the debtor's income for 1988 and 1989 could be less, by the debtor's own admission, he earned substantial income during those years.

The debtor filed this Chapter 7 bankruptcy case on June 30, 2000, and subsequently filed this adversary proceeding seeking to discharge his tax liability for the tax years 1987 through 1990. In essence, the debtor asserts that he could not file the tax returns earlier because he did not have access to his financial records and never kept records of his own. In addition, he testified that he did not file the returns because he was preoccupied by the pending criminal charges. Other than this four-year period, the debtor has timely filed all tax returns, both prior to 1987 and subsequently. No criminal tax charges were ever filed against the debtor.

■ The United States argues that the debtor should not receive a discharge from his liability for the tax years 1987 through 1990 because he "willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C). The burden of proof is on the United States to prove by a preponderance of the evidence that the taxes are nondischargeable under Section 523(a). *In re Griffith*, 206 F.3d 1389, 1396 (11th Cir.2000) (Citations omitted).

In the last few years, the Eleventh Circuit Court of Appeals has issued a number of opinions discussing the applicable standards for bankruptcy courts to follow in interpreting Section 523(a)(1)(C) of the Bankruptcy Code. *In re Fretz*, 244 F.3d 1323 (11th Cir.2001); *In re Griffith*, 206 F.3d 1389 (11th Cir.2000); *In re Haas*, 48 F.3d 1153 (11th Cir.1995), abrogated in part, *In re Griffith*. In the decision of *In re Haas* and *In re Griffith*, the Eleventh Circuit discussed the dischargeability of a tax debt when a debtor timely files his tax returns, but fails to pay the taxes. In that circumstance, non-payment, alone, is not enough to deny the debtor a discharge. Instead, the United States must prove that the non-payment was an intentional and voluntary attempt to evade or defeat the tax liability. Here, however, the debtor neither filed his returns nor paid his taxes.

■ The Eleventh Circuit addressed this precise issue in *In re Fretz* and concluded that "omitting to file tax returns, when coupled with the failure to pay taxes" can result in the debtor losing the ability to discharge his taxes under 523(a)(1)(C). *In re Fretz*, 244 F.3d at 1330, citing with approval, *In re Fegeley*, 118 F.3d 979, 984 (3d Cir.1997); *In re Toti*, 24 F.3d 806, 809 (6th Cir.1994). In *Fretz*, a medical doctor, who suffered from severe alcoholism, failed to file tax returns for a ten-year period. He was able to go to work and could have paid his taxes, but chose to spend the money elsewhere. The Eleventh Circuit held that acts of omission, as well as acts of commission, such as failing to file a tax return, taken with the intent to evade payment and collection of taxes, is sufficient to satisfy Section 523(a)(1)(c) and to make a federal tax liability nondischargeable.

■ In order to succeed, the government must meet a two-step test. Step one, the conduct test, requires the government to prove that the debtor acted in a manner designed to evade or defeat tax liability. Step two, the mental state requirement, examines the debtor's willfulness. *In re Griffith*, 206 F.3d at 1396. As to the mental state test, the government must show that (1) the debtor had a duty to file income tax returns; (2) the debtor knew he had such a duty; and (3) the debtor voluntarily and intentionally violated that duty.

■ Here, the government has proven the mental state test. The debtor clearly had a duty to file income tax returns because he earned substantial income subject to federal income tax liability during the years in question. The debtor also knew that he had such a duty because he requested extensions of time to file his tax returns during each of the four years. Moreover, the debtor demonstrated no impediment that affected his volitional ability to timely file his tax returns. He was sane and healthy. He knew he needed to file the tax returns and voluntarily and intentionally failed to do so.

Instead, the debtor argues that the government failed to meet the conduct test insofar as he did not take any act or fail to take any act in an attempt to evade or defeat his tax liability. He argues that he simply could not prepare the tax returns because he did not have access to his financial records because the FBI had

seized them in March 1989. Moreover, he was preoccupied by the pending criminal investigation and charges.

The Court does not accept the debtor's excuses. The debtor offers no justification for failing to timely file his tax return for 1987. The tax return was due long before the FBI seized his corporate records in March 1989. Moreover, the debtor prepared his tax returns for 1987 and 1990, albeit many, many years after they were due, without reviewing any of the financial records kept by the government. Indeed, the FBI apparently never seized any of the debtor's financial records for the tax year 1990. The debtor simply does not explain why he did not timely file his returns for 1987 and 1990.

As to the tax returns for 1988 and 1989, the debtor contends he kept no personal financial records of any kind that would allow him to prepare his tax returns. The Court did not find this testimony credible. Mr. Passavant must have had a personal checking account or some personal records that would have allowed him to reconstruct his income for 1988 and 1989. Even in the unlikely event no such records existed, the debtor could have asked to see the corporate financial records in the government's custody. He never asked to look at these documents until years later when the income he earned was spent and he was in prison. If the debtor had asked for these records and, for some reason, the government refused him access, the Court likely would find that the debtor took no willful attempt to evade or defeat his tax liability. However, the debtor made no attempts to review the financial records. He simply never asked. The debtor did not take the time or effort to file his tax returns because filing the returns possibly could have complicated his associated criminal prosecution. Accordingly, the Court finds that the United States has met the conduct test by demonstrating that the debtor's omission to act was taken with the voluntary intent to defeat or evade of tax liability for the years 1987 through 1990. The taxes are nondischargeable pursuant to Section 523(a)(1)(C) of the Bankruptcy Code.

Judgment will be entered for the defendant, the United States of America, and against the debtor, Raymond Passavant. The tax liabilities of the debtor for the tax years 1987 through 1990 are not dischargeable pursuant to Section 523(a)(1)(C) of the Bankruptcy Code. A separate final judgment consistent with these Findings of Fact and Conclusions of Law shall be entered.