**In re John Hamilton MATHIS, Jr., Debtor.**

**John Hamilton Mathis, Jr., Plaintiff,**

**v.**

**United States of America, Defendant.**

**Bankruptcy No. 97–35722–BKC–SHF.**

**Adversary No. 98–3053–BKC–SHF–A.**

United States Bankruptcy Court, S.D. Florida.

March 19, 2004.

Daniel L. Bakst, Esq., West Palm Beach, for debtor.

Patricia Dzikowski, Esq., Lauderhill, FL, for trustee.

Don Pickett, Esq., West Palm Beach, FL, Leonard T. Provenzale, Esq., Sunrise, FL, Chip Trimmier, Esq., Boynton Beach, FL, for creditor.

### MEMORANDUM OPINION DETERMINING NON–DISCHARGEABILITY OF FEDERAL TAX LIABILITY

STEVEN H. FRIEDMAN, Bankruptcy Judge.

This matter came before the Court for trial on July 20, 2000, and the Court having considered the evidence presented, having considered the candor and demean-

or of the witnesses, and judged the credibility of same, and having heard argument of counsel, and being otherwise fully advised in the premises, issues this Memorandum Opinion which shall constitute the Findings of Fact and Legal Conclusions of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

## PROCEDURAL HISTORY

The Plaintiff, John Hamilton Mathis ("Plaintiff"), the debtor in this individual chapter 7 bankruptcy proceeding, instituted this adversary proceeding on February 17, 1998 pursuant to 11 U.S.C. § 523(a)(1)[1] to determine that federal income tax obligations for the years 1983 through 1992 were dischargeable. The Defendant, the United States of America ("Defendant"), filed its Answer on March 27, 1998. The Defendant filed its Motion for Summary Judgment on May 1, 1998 and the Plaintiff filed his own Motion for Summary Judgment on that same date. The Motions for Summary Judgment were argued before the Court on June 24, 1998, and on April 26, 1999, the Court granted Defendant's Motion for Summary Judgment, determining that the tax liabilities for the tax years 1983 through 1990 were nondischargeable. The Plaintiff filed a motion for rehearing/reconsideration and clarification which was addressed by the Court ex parte resulting in the Court's denial of the motion on May 21, 1999. However, by way of the order, and with the consent of the Defendant, it was determined that the tax liabilities for years 1991 and 1992 were dischargeable.

An appeal was pursued by the Plaintiff as to the Court's April 26, 1999 Summary Judgment, which resulted in the District Court's reversal of the finding by this Court that the Form 4549 Substitute for Return forms submitted by the Plaintiff did not constitute tax returns for purposes of 11 U.S.C. § 523(a)(1)(B). The Court remanded this matter to this Court to determine "whether the debtor/taxpayer willfully attempted to evade or defeat the payment of a tax", pursuant to 11 U.S.C. § 523. Accordingly, the purpose of the trial on July 20, 2000 was limited to that issue.

## FINDINGS OF FACT

The Debtor filed his voluntary chapter 7 proceeding on November 14, 1997. The Defendant, the United States of America, Department of Treasury, Internal Revenue, is a creditor of the Plaintiff. The Plaintiff listed the Defendant as a creditor on his bankruptcy schedules in the following amounts:

(a) $49,046.18 for 1040 taxes for the year 1983;

(b) $193,843.96 for 1040 taxes for the year 1984;

(c) $216,681.21 for 1040 taxes for the year 1985;

---

**1.** This statute provides

"(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
 (1) for a tax or a customs duty–
 (A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;
 (B) with respect to which a return, if required–

 (i) was not filed; or
 (ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or
 (C) With respect which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax."

(d) $20,811.86 for 1040 taxes for the year 1986;

(e) $57,775.97 for 1040 taxes for the year 1987;

(f) $24,687.99 for 1040 taxes for the year 1988;

(g) $118,008.41 for 1040 taxes for the year 1989;

(h) $26,148.79 for 1040 taxes for the year 1990;

(i) $7,702.75 for 1040 taxes for the year 1991;

(j) $6,236.01 for 1040 taxes for the year 1992;

(k) $6,063.20 for 1040 taxes for the year 1993;

(*l*) $6,085.90 for 1040 taxes for the year 1994; and

(m) $7,071.81 for 1040 taxes for the year 1996.

The Defendant was given proper notice of the filing of the bankruptcy proceeding. In March 1993, after having produced extensive documentation during a one and one-half year ongoing audit with one Steven Smiler, an IRS Revenue Agent, Plaintiff filed and signed IRS prepared forms known as "Form 4549–CG" (Substitute for Returns) for the years 1983 through 1990, whereby the debtor consented to the assessment of 1040 taxes and their collection.

Mr. Smiler testified that he automatically prepares a blank substitute for return in order to open up a file on taxpayers that he is examining. (CP# 30, page 25, lines 9–25, and page 26, lines 1–5). He also acknowledged both at trial and in his deposition that the Plaintiff cooperated with him when he was contacted and that the Plaintiff did produce the necessary documentation to allow him to prepare the returns. (CP# 30, page 33, lines 8–18). The entire record, between transcripts and testimony at trial, evidences that the Plaintiff met with Mr. Smiler on approximately fifteen (15) to twenty (20) occasions over a period of approximately one and a half years in an effort to cooperate in their examination process. Ultimately, with the assistance of Mr. Smiler, all of the Debtor's delinquent tax returns, through tax year 1992, were prepared and filed (CP# 32, page 76, lines 6–25).

The Debtor obtained an architectural degree from Auburn University, and held a Florida State Building Architectural License between 1974 and 1979. Also, the Debtor served on the West Palm Beach City Planning Commission from 1975 until the early 1980s. Thereafter, the Debtor was involved in various business enterprises, including Mathis Company, Mathis Enterprises, and Golf Plan Group, and each of these entities maintained bank accounts during the course of their operations. Notwithstanding the Debtor's failure to file tax returns between 1983 and 1996, the Debtor acknowledged that he had a duty to file tax returns, and to make estimated tax payments, since he was self-employed (CP# 32—pages 17–18). He further testified that he was aware of his obligation to pay his tax liability, but that he was simply unable to do so (Tr. Trans.—Pg.43). At trial, the Debtor acknowledged that in some years between 1983 and 1990, he generated "six figures worth of income" (Tr. Trans.—Pg.64), yet while he did make mortgage payments on his real property, and also paid real estate taxes, he failed to filed tax returns between 1983 and 1990, and failed to pay federal income taxes for income earned during those years (Tr. Trans.—Pg.43). As to his duty to file Federal income tax returns, Mr. Mathis acknowledged that he had such a duty, but testified that he was "fighting to stay alive to pay expenses" (Tr. Trans.—Pg.43). However, during many of the tax years in question, Mr. Mathis' income ranged between $78,000 and $135,000, based upon

the Substitutes for Return which he eventually filed (Defendant's Exhibits A and C). As far back as 1984, the entities operated by the Debtor generated approximately $75,000 in revenues (Defendant's Ex. 8), and by 1985, his business entities generated almost $185,000 in revenues (Tr. Trans.—Pg.105). He acknowledged that he owes in excess of $700,000 in federal taxes, but explains his failure to pay his tax obligation by virtue of the fact that a number of his business entities failed (Tr. Trans.—Pg.63).

The Debtor rationalized that he would be able to pay his Federal tax liability based upon money he would earn on upcoming projects, but that he became so far behind in failed projects that he had neither the money nor the information to file tax returns or to pay the tax liability (Tr. Trans.—Pg.135). However, he was able to settle most of the judgments entered against him (Tr. Trans.—Pg.140).

### CONCLUSIONS OF LAW

 The issue presented for determination is whether Plaintiff's tax liabilities accruing between the years 1983 and 1990 are dischargeable. The Plaintiff contends that a debtor's mere nonpayment of taxes does not constitute a "willful attempt to evade or defeat" such taxes. *In re Lynch*, 299 B.R. 62 (Bankr.S.D.N.Y.2003). The burden of proof for establishing that a claim should be nondischargeable lies with the party seeking to establish such claim nondischargeable. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The Plaintiff has cited, as support for his position, the Eleventh Circuit decision of *In re Griffith*, 206 F.3d 1389 (11th Cir.2000). An issue addressed in *Griffith* was "whether § 523(a)(1)(C) applies to a willful attempt to evade or defeat collection of taxes where the debtor engaged in affirmative acts other than mere non-payment

of taxes." *Id.* At 1394. The Court concluded that the Debtor had willfully attempted to evade or defeat payment of a tax, affirming the lower courts' rulings that the debtor's tax debts were nondischargeable. In so doing, the Court reaffirmed its ruling of *In re Haas*, 48 F.3d 1153 (11th Cir.1995), that § 523(a)(1)(C) excepts from discharge only those taxes with respect to which the debtor "willfully attempted in any manner to evade or defeat such tax", and in so ruling, held that Congress did not intend that a failure to pay taxes, without more, should result in the nondischargeability of a debtor's tax liabilities in bankruptcy. *Id.* at 1157.

In *Griffith*, the Eleventh Circuit referenced its ruling in *Haas*:

> . . . we now conclude that the more reasonable interpretation of § 523(a)(1)(C) is that it renders nondischargeable tax debts where the debtor engaged in affirmative acts seeking to evade or defeat collection of taxes. This interpretation accords well with the interests that Congress was attempting to balance in enacting the predecessor statute to § 523(a)(1)(C): to permit "an honest but financially unfortunate debtor [to make] a fresh start unburdened by what may be an overwhelming liability for accumulated taxes" while avoiding the creation of "a tax evasion devise". As the Tenth Circuit recognized, an interpretation of § 523(a)(1)(C) that permits a debtor to engage in affirmative behavior in order to evade collection of taxes serves neither of those purposes but, instead, advantages *dishonest* debtors. (citations omitted).

*In re Griffith*, 206 F.3d at 1394.

Since the issuance of the *Griffith* opinion, the Eleventh Circuit has again had occasion to visit the dischargeability of a Federal tax liability under 11 U.S.C. § 523(a)(1)(C). In the case of *In re Fretz*,

244 F.3d 1323 (11th Cir.2001), the debtor failed to filed federal income tax returns or pay his taxes between 1982 and 1992. As in the instant case, the debtor, after being contacted by the IRS, signed tax returns prepared by the IRS, reflecting a tax liability exceeding $1 million. The debtor, a medical doctor, thereafter filed a chapter 7 petition, and commenced an adversary proceeding seeking to discharge his tax liability. The bankruptcy court held that the taxes for the years at issue were dischargeable, and on appeal, the district court affirmed, citing *Griffith* and *In re Haas,* 48 F.3d 1153 (11th Cir.1995), as controlling authority. The Eleventh Circuit reversed, distinguishing *Griffith* and *Haas* on the basis that, *sub judice,* the debtor not only failed to pay taxes but also failed to file tax returns. The Eleventh Circuit thus determined that acts of omission designed to evade payment or collection of taxes are sufficient to satisfy § 523(a)(1)(C).

An interpretation of § 523(a)(1)(C) which covered only acts of commission and not culpable acts of omission would limit the means by which a taxpayer may be found to have willfully attempted to evade or defeat taxes, and it would tend to make the modifying phrase "in any manner" superfluous...we hold § 523(a)(1)(C) covers both acts of commission acts of omission. Dr. Fretz' failure to file tax returns, coupled with his failure to pay his taxes, satisfy the conducted requirement of § 523(a)(1)(C).

The same acts of omission which were dispositive in *Fretz,* i.e., a failure to file tax returns combined with a failure to pay taxes, are present *sub judice.* The Court finds the *Fretz* decision to be controlling. Accordingly, the Court finds that the Debtor's unpaid tax liability which has accrued for the years 1983 through 1990, inclusive, is non-dischargeable pursuant to 11 U.S.C. § 523(a)(1)(C).

Pursuant to Bankruptcy Rule 9021, a separate judgment shall be entered.