[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10587
Non-Argument Calendar
_____

D. C. Docket No. 0:13-cv-60960-KAM,
Bkcy. No. 12-bkc-01259-RBR

In Re: MOISES FAIDENGOLD,

Debtor.

_____

DIANA ESCORIHUELA,
MARIA NANCY DE ASCENCAO RODRIGUEZ,

Plaintiffs-Appellants,

versus

MOISES FAIDENGOLD,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 19, 2014)

Before PRYOR, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

Appellants Maria Nancy de Ascencao Rodriguez and Diana Escorihuela appeal from the district court's decision affirming the bankruptcy court's rejection of their claims of nondischargeability under 11 U.S.C. § 523(a)(2)(A) and (a)(6). We affirm.

I.

Appellants are Venezuelan citizens who reside in Caracas, Venezuela. In 2007, Escorihuela entered into an agreement with Appellee Moises Faidengold, whereby Escorihuela would provide money to Faidengold in exchange for a twelve percent rate of return. During the process of negotiating this agreement, Escorihuela asked Faidengold, "[W]hat if you lose all the money?" Faidengold responded: "[Y]ou would get capital or principal, plus the twelve percent. I am responsible for you for the whole money. You have—the risk is zero, because you are basically giving money—giving me money and I'm giving you back money, plus interest . . . ." From 2007 to 2009, Escorihuela provided Faidengold with approximately $900,000. Faidengold entered into a similar agreement with Rodriguez in 2008; from 2008 to 2009, Rodriguez provided Faidengold with approximately $343,600.

Faidengold gave Appellants documents, written in English, entitled "Promissory Note," as receipts for the money he received from them. Appellants,

2

however, do not understand English.  According to Appellants, there is no Spanish equivalent for the term "promissory note," and the literal translation of "promissory note" has no meaning in the Spanish language.  Faidengold also communicated with Appellants in person, by phone, and by e-mail.  In these communications, the parties used the Spanish equivalent of words such as "invest," "manage," and "placement."  Faidengold testified before the bankruptcy court that he could not recall if he ever described the parties' arrangment to Appellants using the Spanish word for loan, "préstamo."

In December 2011, Faidengold filed for Chapter 7 bankruptcy.  In March 2012, Appellants began an adversary proceeding in the bankruptcy court, alleging, inter alia, that Faidengold's debts to them were not dischargeable through bankruptcy under 11 U.S.C. § 523(a)(2)(A) and (a)(6).[1]  As relevant to this appeal, Appellants claimed that Faidengold obtained the debts by fraudulent representations.  According to Appellants, Faidengold "misrepresented to [them] that he would invest their money on their behalf in safe stocks in the U.S. stock market that would generate for them a fixed, high rate of return, with zero risk of loss," when in fact Faidengold treated the money as personal loans and used the money for interest payments to Appellants and for his own expenses.

---

[1] Rodriguez's ex-husband, Francisco Rodriguez, was also originally a plaintiff in this case. He did not appear for trial, and the bankruptcy court entered a directed verdict against him.  He is not a party to this appeal.

Following a bench trial, on February 14, 2013, the bankruptcy court ruled that the debts owed by Faidengold to Appellants were not excepted from discharge under either 11 U.S.C. § 523(a)(2)(A) or (a)(6).  The district court affirmed, and Appellants appealed.

## II.

The sole issue raised in Appellants' briefs is whether the bankruptcy court erred in determining that Faidengold's debts to Appellants were not excepted from discharge under 11 U.S.C. § 523(a)(2)(A).  As a result, Appellants have abandoned their claim under 11 U.S.C. § 523(a)(6) relating to willful and malicious injury.  See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 680 (11th Cir. 2014) (noting that "[w]hen an appellant fails to challenge properly on appeal one of the grounds on which the [lower] court based its judgment, he is deemed to have abandoned any challenge of that ground").

Section 523(a)(2)(A) provides an exception to discharge in bankruptcy for a debt for money "to the extent [the debt was] obtained by . . . false pretenses, a false representation, or actual fraud."  11 U.S.C. § 523(a)(2)(A).  To prove that a debt is nondischargeable under § 523(a)(2)(A), a creditor must show that "(1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the misrepresentation."  In re Bilzerian, 153 F.3d 1278, 1281 (11th

4

Cir. 1998). An objecting creditor has the burden of proving each of these elements by a preponderance of the evidence. See In re Griffith, 206 F.3d 1389, 1396 (11th Cir. 2000) (en banc). Whether a debtor in bankruptcy made a false representation is an issue of fact that we review for clear error. See Birmingham Trust Nat'l Bank v. Case, 755 F.2d 1474, 1476 (11th Cir. 1985), superseded by statute on other grounds, Pub. L. No. 98-353, 98 Stat. 333 (1984); cf. First Ala. Bank of Montgomery, N.A. v. First State Ins. Co., 899 F.2d 1045, 1057 (11th Cir. 1990) (stating, in a non-bankruptcy context, that "[a] finding of fraud is a finding of fact, which [this Court] will not set aside on appeal unless it is clearly erroneous").

Appellants principally contend that the bankruptcy court erred in finding that there had been no false representations or actual fraud on Faidengold's part. They assert that Faidengold "misrepresented to [them] that he would invest their money on their behalf in safe stocks in the U.S. stock market that would generate for them a fixed, high rate of return, with zero risk of loss," when in fact Faidengold treated the money as personal loans and used the money for interest payments to Appellants and for his own expenses. As the bankruptcy court pointed out, however, Faidengold guaranteed full repayment of the principal provided to him by Appellants, and he promised to pay them a rate of return equal to a fixed percentage of the principal. Moreover, Appellants placed no restrictions on the use of the funds provided, and they did not require Faidengold to furnish any statements or

reports about the performance of their accounts as is normally required of investment managers. The bankruptcy court accordingly found that, despite their protestations to the contrary, Appellants, like Faidengold, understood and contemplated the parties' arrangement to be in the nature of personal loans to Faidengold, not equity investments that would be managed by him. The bankruptcy court therefore determined that Faidengold did not mislead or defraud Appellants with respect to the transactions at issue. After careful review of the record, we conclude that this finding was not clearly erroneous.[2]

We thus affirm the district court's decision to affirm the bankruptcy court's ruling that debts owed by Faidengold to Appellants were not excepted from discharge under 11 U.S.C. § 523(a)(2)(A).

**AFFIRMED**.[3]

---

[2] Appellants insist on appeal that, under Reves v. Ernst & Young, 494 U.S. 56, 110 S. Ct. 945 (1990), there is a presumption that the arrangement between Appellants and Faidengold was for equity investments rather than for personal loans. This argument is based on a flawed reading of Reves, which sets out a framework for determining whether a promissory note is a "security" within the meaning of the Securities Acts of 1933 and 1934, and is therefore inapposite to this case. Id. at 64–67, 110 S. Ct. at 951–52. This argument also misses the point—the question is not whether the arrangement between Appellants and Faidengold was in fact an investment scheme, but whether Faidengold defrauded Appellants into believing that the money they gave him was not a personal loan and that his use of the money was not unrestricted.

[3] To the extent that Appellants also argue that Faidengold had a duty to voluntarily disclose how he intended to use the money and that his failure to do so independently constitutes "false pretenses, a false representation, or actual fraud," 11 U.S.C. § 523(a)(2)(A), this argument was not clearly raised in the lower courts and we need not consider it for the first time on appeal. See Sterling Fin. Inv. Grp., Inc. v. Hammer, 393 F.3d 1223, 1226 (11th Cir. 2004) ("[A]rguments not presented in the district court will not be considered for the first time on appeal."). In any event, we have stated that "not making full disclosure [in connection with a personal loan] is not

within the [11 U.S.C. § 523(a)(2)(A)] exception" to dischargeability; "there must be actual overt false pretense or representation to come within the exception." In re Hunter, 780 F.2d 1577, 1580 (11th Cir.1986), abrogated on other grounds by Grogan v. Garner, 498 U.S. 279, 111 S. Ct. 654 (1991).

Other arguments by the Appellants are rejected without need for discussion.

7